**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

GRANT GRAYSON,

Plaintiff,

v.

SCHWEITZER-MAUDUIT
INTERNATIONAL, INC.; and MATIV
HOLDINGS, INC.,

Defendants.

Case No. 24-cv-1648 (LMP/EMB)

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR**
**SUMMARY JUDGMENT**

---

Charlie Alden, **Gilbert Alden Barbosa PLLC, Burnsville, MN**, for Plaintiff.

Elizabeth J. Roff, **Fisher & Phillips LLP, Minneapolis, MN**; Craig R. Annunziata and Shane Stover, **Fisher & Phillips LLP, Chicago, IL**; and Gregory Dale Ballew, **Fisher & Phillips LLP, Kansas City, MO**, for Defendants.

Plaintiff Grant Grayson alleges that Defendants Schweitzer-Mauduit International, Inc., and Mativ Holdings, Inc. (collectively "Mativ") fired him because of his disability or because he reported instances of disability harassment, in violation of the Minnesota Human Rights Act ("MHRA"). Mativ now moves for summary judgment. ECF No. 34. Because Grayson has failed to raise a genuine dispute of material fact as to whether he is disabled, and because Grayson abandoned any reprisal claims, the Court grants Mativ's summary judgment motion.

## BACKGROUND

Mativ is an international corporation that operates a plastics manufacturing plant in Minneapolis, Minnesota. ECF No. 1-1 ¶¶ 2, 4. Sometime in late 2022, Grayson applied

for a position as a Machine Operator at Mativ's Minneapolis facility. *Id.* ¶ 5. During the application process, Mativ became aware that Grayson had been recently released from civil commitment in the Minnesota Sex Offender Program ("MSOP"). Grayson had, in fact, been committed to MSOP since 2009, *see generally In re Civ. Commitment of Grayson*, No. A10-184, 2010 WL 3000701, at *1 (Minn. Ct. App. Aug. 3, 2010), residing for the entire time at MSOP's facility in St. Peter, ECF No. 35-3 at 9:15–24. Grayson was committed as a sexually dangerous person who suffered from pedophilic disorder, fetishistic disorder, voyeuristic disorder, major depressive disorder, alcohol use disorder, and other specified personality disorder. ECF No. 40 at 3.

Ultimately, Mativ hired Grayson in October 2022. ECF No. 35-3 at 46:23–47:1. At some point after his hiring, Grayson's coworkers and supervisor Chris Olson became aware of Grayson's background. ECF No. 35-5 at 20:15–22:17. Olson became aware after one of Grayson's coworkers showed Olson a news article and thereafter learned that "everybody knew" and "it was the elephant in the room." *Id.* at 21:5–23:2. Olson was approached by several employees who expressed dismay that Mativ hired someone with Grayson's background. *Id.* at 26:9–14. One of Grayson's coworkers went so far as to alert a union representative who approached Mativ to question why it hired Grayson. ECF No. 35-14 at 9:2–12, 16:6–14. Mativ informed the union that it stood by its hiring of Grayson, that the union was not entitled to information about Mativ's hiring process, and that Mativ concluded that Grayson presented no safety risk to any other employees. *Id.*; *see also* ECF No. 48-5.

Grayson was promoted to a position as a night shift supervisor shortly after the union's inquiry. ECF No. 35-3 at 47:7–18, 63:9–13; ECF No. 35-5 at 20:1–14; ECF No. 35-6 at 15:22–24, 20:11–12. Nevertheless, Grayson's coworkers continued to object to his employment, and Olson and Mativ fielded several more complaints about Grayson. ECF No. 35-5 at 26:4–14; 34:23–35:21. One specific complaint accused Grayson of inappropriately touching another coworker, ECF No. 35-6 at 23:1–12, but Mativ investigated the allegation and concluded it lacked merit, *id.* at 24:9–22; ECF No. 35-3 at 41:21–24. Another complaint, first made by coworker Tyree Tolson, accused Grayson of stating that Black people are typically "lazy." ECF No. 35-15 at 27:10–28:16. After hearing the comment, Tolson collected statements from other employees accusing Grayson of various forms of unprofessional conduct, ECF No. 35-17, and submitted them to Kathy Hill, Mativ's Senior Human Resources Partner, ECF No. 35-14 at 5:20–21, 8:20–9:20.

In May 2023, Hill decided to terminate Grayson's employment because of the complaints. *Id.* at 9:25–12:17. Hill did not personally investigate the veracity of the statements, nor talk with anyone else about Grayson's alleged misconduct. *Id.* at 9:21–10:24. But she summarized her decision in an email, writing that she believed termination to be appropriate because, among other reasons, Grayson made the alleged racial comments and had a pattern of adversarial treatment of others. ECF No. 48-9.

On April 16, 2024, Grayson filed an action in Minnesota state court alleging that Mativ violated the MHRA. ECF No. 1-1. First, Grayson alleged that Mativ terminated his employment on "the basis of disability" as he is a "gay man who suffers from a serious mental illness." *Id.* ¶¶ 32–37. Second, Grayson alleged that Mativ terminated his

3

employment as an act of reprisal for reporting instances of harassment to Mativ's human resources department. *Id.* ¶¶ 38–45. Mativ removed the case to federal court, citing diversity jurisdiction, ECF No. 1 at 2–3, and now moves for summary judgment, ECF No. 34.

## ANALYSIS

Summary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When considering a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). But courts "must not weigh evidence or make credibility determinations." *Sanimax USA, LLC v. City of South St. Paul*, 95 F.4th 551, 558 (8th Cir. 2024) (internal quotation marks omitted) (citation omitted).

## I.      MHRA Disability Discrimination Claim

The MHRA prohibits an employer from terminating an employee based on disability. Minn. Stat. § 363A.08, subd. 2. To prevail on a claim under the MHRA, a plaintiff must show (1) the plaintiff has a "disability" as defined by the MHRA, and (2) employment discrimination within the meaning of the MHRA on the basis of the

disability. *Johanning v. Summit Orthopedics, Ltd.*, No. A21-0313, 2021 WL 5872664, at *3 (Minn. Ct. App. Dec. 13, 2021). Absent direct evidence of discrimination, a plaintiff must show: (1) he has a disability within the meaning of the MHRA; (2) he is qualified to perform the essential functions of his job; and (3) he suffered an adverse employment action because of his disability. *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019).

Mativ is entitled to summary judgment on Grayson's disability discrimination claim because Grayson fails to raise a genuine dispute of material fact as to whether he is disabled. In May 2023, when Grayson's employment was terminated, the MHRA defined a disabled person as someone who "(1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Johanning*, 2021 WL 5872664, at *4 (quoting Minn. Stat. § 363A.03, subd. 12).[1] Grayson argues only the first provision, that is, that he has an impairment that limits a major life activity.[2] ECF No. 47 at 16 (arguing

---

[1]    In 2024, the Minnesota legislature amended the definition to include a fourth provision: when a person "(4) has an impairment that is episodic or in remission and would materially limit a major life activity when active." Minn. Stat. § 363A.03 (2025). Mativ correctly argues that the amendment does not apply retroactively, such that Grayson cannot use the new "episodic or in remission" provision. ECF No. 35 at 18–19. Grayson alludes to the current definition of disabled person in briefing but does not otherwise argue that he is disabled by reference to the fourth provision or argue that it is retroactively applicable. ECF No. 47 at 13. As a result, the parties appear to agree that Grayson cannot use the MHRA's new "episodic or in remission" provision.

[2]    Grayson recites the standard for a "regarded as" claim. ECF No. 47 at 12. But he does not argue that Mativ terminated his employment because it regarded him as having a disability. *Id.* at 13–16.

that "[t]here is no question as to whether Grayson suffers from a disability, nor whether his condition interferes with the major-life activity of working").  Major life activities are "activities that are of central importance to daily life," such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Johanning*, 2021 WL 5872664, at \*4 (quoting *Gee v. Minn. State Colls. & Univs.*, 700 N.W.2d 548, 553 (Minn. Ct. App. 2005)).  A major life activity is materially limited when the activity is "greatly impeded."  *Id.* (quoting *Sigurdson v. Carl Bolander & Sons Co.*, 532 N.W.2d 225, 228–29 (Minn. 1995)).

Even taking the facts in the light most favorable to Grayson, there is no genuine dispute about whether he is disabled.  The first step in showing a disability is showing that a plaintiff suffers from an impairment.  *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 (8th Cir. 2003) (explaining that before asserting the material limitation of a major life activity, a plaintiff must first "establish the specific impairment").  Initially, Grayson argued that he was a gay man who suffers a serious mental illness.  ECF No. 1-1 ¶¶ 32–37.  In his responsive briefing, however, Grayson only discusses pedophilic disorder and whether it qualifies as a disability under the MHRA.[3]  ECF No. 47 at 11–16.  That would, in theory, indicate that Grayson is alleging that pedophilia impairs him.  Yet

---

[3]    Pedophilia, as defined by the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders, is characterized by recurrent, intense, sexually arousing fantasies, sexual urges, and/or behaviors involving sexual activity with prepubescent children that have persisted for a period of at least six months.  American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* § 302.2 (5th ed. rev. 2022).

throughout this litigation, Grayson personally and repeatedly disavowed that, at the time of his employment with Mativ, he suffered from pedophilia. *See* ECF No. 35-3 at 21:10–13 (Grayson stating in his deposition that "[p]edophilia is not part of my diagnosis"); *id.* at 80:4 (Grayson stating that "I'm not a pedophile"); *id.* at 110:16–111:7 (Grayson stating that his diagnosis is "not otherwise specified mental disorder with traits of antisocial, depression, alcoholism" and that his diagnosis was changed in 2013 or 2014 to withdraw a pedophilic disorder diagnosis). Mativ even served Grayson with an interrogatory asking Grayson to identify "each condition/disability" that he suffers from. ECF No. 35-8 at 10–11. Grayson responded that he only suffers from "personality disorder not otherwise specified ("PD-NOS") and alcoholism." *Id.* It is therefore unclear *what* impairment Grayson claims to suffer from.

Although Grayson's briefing reflects his attorney's argument that Grayson has a pedophilic disorder, nowhere in the record does Grayson actually assert that he is a pedophile. Of course, the arguments of Grayson's attorney are not evidence. *Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 838 (8th Cir. 2006). And without any evidence that Grayson has a pedophilic disorder, the Court could grant summary judgment to Mativ on this basis alone. *Lewis v. Ashland, Inc.*, 813 F. Supp. 2d 1113, 1118 (D. Minn. 2011) (explaining that a plaintiff "may not create a genuine issue of material fact by contradicting his sworn deposition testimony"); *see also Philip v. Ford Motor Co.*, 328 F.3d 1020, 1024 (8th Cir. 2003) (holding that disability claims raised for the first time after the closure of discovery are improper).

But even considering Grayson's current reference to pedophilia, Grayson further fails to establish he is disabled because he put forth no evidence that pedophilia materially limits his major life activities. "The degree to which a condition limits one or more major life activities is evaluated based on the plaintiff's specific circumstances." *Hoover v. Norwest Priv. Mortg. Banking*, 632 N.W.2d 534, 543 (Minn. 2001); *Johanning*, 2021 WL 5872664, at *6 (explaining that whether a person is disabled is determined on a case-by-case basis); *Liljedahl*, 341 F.3d at 841 (holding that even though cancer could qualify as a disability in some situations, plaintiff failed to show she was disabled because she did not establish that *her* cancer materially limited *her* major life activities).

Grayson claims, in his responsive brief, that his pedophilia impacts four major life activities: reproduction, the ability to engage in sexual relations, the ability to interact with others, and working. ECF No. 47 at 12, 16. Each activity could qualify as a "major life activity" in the abstract. But Grayson points to no evidence in the record that *his* pedophilic disorder substantially limits *him* in the exercise of those major life activities.[4] Instead of pointing to any medical records or deposition testimony explaining how his life is impacted by his pedophilia, Grayson cites to podcasts and magazine articles discussing how others diagnosed with pedophilia struggle with "reproduction, the ability to engage in sexual relations, and the ability to interact with others." ECF No. 47 at 12–13. This evidence does not show that Grayson, personally, is limited in his major life activities. *Hillesheim*

---

[4]    Notably, when deposed, Grayson affirmatively stated that his mental illnesses do not affect his ability to work. *See* ECF No. 35-3 at 112:5–7 (Grayson stating that his diagnoses do not make it difficult for him to work); ECF No. 35-9 at 28:25–29:9.

*v. Wells Fargo Bank, N.A.*, No. 20-cv-533 (WMW/HB), 2021 WL 4173167, at *2 (D. Minn. Sept. 14, 2021) (holding that plaintiff failed to show he had a disability when he "testified that his heart attack did not affect his ability to perform any major life activities," he "d[id] not consider himself to be disabled," and he presented no "medical evidence or other evidence in the record demonstrating that he has an impairment that materially limits any major life activity"); *Villaume v. iTradeNetwork, Inc.*, No. 24-cv-2005 (ECT/DLM), 2025 WL 33697, at *5 (D. Minn. Jan. 6, 2025) (holding that plaintiff who alleged "no facts hinting that [her] health conditions—anxiety, depression, and attention-deficit disorder—materially limited her major life activities" failed to state a claim).[5]

In short, Grayson puts forth no evidence, let alone genuinely disputed evidence, that shows that his alleged impairment of pedophilia (which Grayson himself has disclaimed) substantially limits his major life activities.  It is therefore undisputed for purposes of summary judgment that Grayson is not disabled, and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1191 (8th Cir. 2014)

---

[5]      To the extent that Grayson maintains that alcoholism interferes with major life activities,  these claims are again undercut by his own testimony.  Grayson testified that he has been sober since 2015.  ECF No. 35-3 at 122:4–18.  He also stated that he has not consumed alcohol since he left MSOP and that his alcoholism is in remission.  *Id.* at 20:8–17.  While an individual does not have to be actively consuming alcohol to suffer from alcoholism, the record does not provide any evidence about how this condition impacted one or more major life activities at the time of his employment termination, especially in the context of Grayson's undisputed sobriety.  *Johanning*, 2021 WL 5872664, at *6 (affirming grant of summary judgment to employer where employee relied on a mere diagnosis of alcoholism because plaintiff needed "evidence to show how, in terms of [the employee's] own experience, his alcoholism limits . . . [a] major life activity").

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  Accordingly, the Court grants summary judgment to Mativ as to Grayson's MHRA disability discrimination claim.[6]

## II.   Grayson Forfeited His MHRA Reprisal Claim

Mativ also moves for summary judgment on Grayson's reprisal claim.  ECF No. 35 at 39.  Grayson failed to provide an argument in response and provided no legal or factual basis in support of his reprisal claim.[7]  *See generally* ECF No. 47.  Mativ, in reply, asked the Court to find that the claim was abandoned.  ECF No. 51 at 1–2.  At oral argument, Grayson indicated that he did not intend to concede the reprisal claim and believed it was preserved despite his failure to address Mativ's arguments in briefing.

That is not how summary judgment works.  Failure "to oppose a basis for summary judgment constitutes waiver of that argument."  *Satcher v. Univ. of Ark. at Pine Bluff Bd.*

---

[6]   Because the Court concludes that there is no genuine dispute that Grayson does not have an impairment that substantially limits a major life activity, the Court need not resolve whether pedophilia can constitute a disability under the MHRA in the first place.  But the Court notes that no Minnesota state court has addressed the issue, and the MHRA itself is silent.  The Americans with Disabilities Act, by contrast, explicitly excludes "pedophilia" from constituting a qualifying disability.  42 U.S.C. § 12211(b)(1).  And because "courts frequently treat the ADA and MHRA as interchangeable because their definitions overlap in many respects," *Mell v. Minnesota State Agric. Soc'y*, 557 F. Supp. 3d 902, 919 (D. Minn. 2021), the ADA's exclusion may support a categorical exclusion under the MHRA.

[7]   The MHRA prohibits engaging in "any reprisal against any person" for opposing "a practice forbidden" by the MHRA.  Minn. Stat. § 363A.15(1).  In his complaint, Grayson alleged that his coworkers "harassed and discriminated" against him because he is a "gay man with a mental illness," and that after he reported the discrimination to Mativ, Mativ fired him.  ECF No. 1-1 ¶¶ 41–44.

*of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). That rule is particularly apt here. The entire purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Grayson did not address Mativ's argument for dismissing the reprisal claim, which frustrates the Court's ability to determine whether there is a genuine issue for trial. Accordingly, Grayson has forfeited the claim, and the Court grants summary judgment to Mativ on Grayson's reprisal claim. *Satcher*, 558 F.3d at 735 (holding that failure to oppose an argument "warrant[s] the entry of summary judgment").

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mativ's Motion for Summary Judgment (ECF No. 34) is **GRANTED**; and

2. Grayson's complaint (ECF No. 1-1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 25, 2026                 *s/Laura M. Provinzino*
                                      Laura M. Provinzino
                                      United States District Judge